RECEIVED

JAN 3 1 2012

TONY R. MOORE, CLERK
BY_____
DEPUTY

**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF LOUISIANA**
**ALEXANDRIA DIVISION**

| | |
|---|---|
| **UNITED STATES OF AMERICA** | **CRIMINAL NO: 09-CR-00271** |
| **VERSUS** | **JUDGE DONALD E. WALTER** |
| **JOHNNIE RAY CARPENTER** | **MAG. JUDGE JAMES D. KIRK** |

## MEMORANDUM RULING

Before the Court is a Motion for Appeal of the Magistrate Judge's Decision [Doc. #80] filed on behalf of Johnnie Ray Carpenter, over which this Court has jurisdiction pursuant to 18 U.S.C. § 3402.[1] The Government provided a response to this motion [Doc. #90]. For the reasons set forth below, the defendant's conviction is **AFFIRMED**.

## BACKGROUND FACTS

On August 25, 2009, the U.S. Marshal's Service in the Western District of Louisiana, Alexandria Division, received a request from the Western District of Washington to execute an arrest warrant on one Porcia Sanders.[2] Such requests are assigned to the fugitive task force, which was coordinated at this time by Deputy U.S. Marshal Glenn Belgard. The task force was also comprised of officers from various other law enforcement agencies, including the Sheriff's

---

[1] 18 U.S.C. § 3402 provides: "In all cases of conviction by a United States magistrate judge an appeal of right shall lie from the judgment of the magistrate judge to a judge of the district court of the district in which the offense was committed."

[2] The arrest warrant issued was for the offense of bank fraud. However, the warrant stipulated that Porcia Sanders was also being investigated by several different federal and state law enforcement agencies in connection with two homicides and two drive-by shootings. [Doc. #88, pp. 12-13].

Offices of Rapides, LaSalle and Concordia Parishes, Louisiana State Police, Louisiana State Probation and Parole, and the Alexandria Police Department. Also, for this particular arrest warrant, the task force was accompanied by members of the FBI Violent Gang Task Force out of Seattle, Washington, from where Porcia Sanders' arrest warrant had been issued. After locating the two target vehicles associated with Porcia Sanders, the fugitive task force traveled to an apartment complex[3] in Winnfield, Louisiana on August 27, 2009 to execute the federal arrest warrant.

The task force consisted of approximately ten law enforcement officers, conspicuously dressed in black, long-sleeve t-shirts and bulletproof vests. The shirts bore labels of "police" and "U.S. Marshals," and badges were displayed on both the front and back of their uniforms, which were clearly visible. The apartment complex is located in a low-income, high drug-trafficking area of Winnfield. The officers arrived on the scene in unmarked vehicles, per standard task force procedure.

Once on scene, part of the team approached apartment number 11, where contact was made with Porcia Sanders. Another group of approximately three officers was confronted by a male subject standing near one of the vehicles known to be associated with Sanders. Pursuant to standard procedure when executing felony arrest warrants, the officers approached the male subject with weapons drawn and ordered the man to get down on the ground. The man failed to comply with the officers' order and was then forced to the ground and secured for officers' safety. At this time, the team inside Sanders' apartment called out "[a]ll secure. Target in custody," conveying that Sanders had been apprehended.

---

[3] The target address was 1701 South Jones Street, Winnfield, Louisiana. [Doc. #88, p.16].

Once Porcia Sanders was secured, the task force proceeded to execute a state arrest warrant for a Romando Russell. Mr. Russell is Porcia Sanders' uncle and also has ties to Seattle, Washington. Mr. Russell complied with the officers' requests to put his hands behind his back, but then immediately became belligerent and started using racial slurs towards the officers. At trial, Deputy Glenn Belgard described the surrounding crowd as "very emotional," with approximately twenty-five to thirty people gathered in what the task force officers' refer to as the inner perimeter or "danger zone." Officers typically try to keep this zone clear, for the safety of both the officers and the arrestee(s). Although the officers arresting Porcia Sanders had concluded their interview and apprehension, they could not exit the apartment because the area outside was not under control. The officers tried to control the crowd and maintain order in the area so that they could remove Porcia Sanders from her apartment and complete the execution of both arrests. As the crowd began to gather and build, the officers remained outside of the vehicle with Romando Russell, as they confirmed his identity and double-locked his handcuffs.

At this point, the Defendant Johnnie Ray Carpenter emerged from the crowd, "very animated, pointing fingers" and demanding to know why the arrests were being effectuated.[4] The testimony described Carpenter's actions as "inciting the crowd," and further described his affect as "very confrontational, very excitable."[5] Carpenter was not in uniform, never identified himself as a police officer, and was generally unknown and unrecognized by the task force officers. As Deputy Belgard attempted to control the crowd, the Defendant wedged himself between one of

---

[4] Defendant was alerted to the presence of the task force officers in Winn Parish via a 911 call dispatched over the police radio. [Doc. #89, p. 59].

[5] Doc. #88, pp. 26-27.

the task force officers and the arrestee, Romando Russell. Multiple orders (at least ten) were given to the Defendant for him to "step back, get away from [the] prisoner."[6] None of these orders were obeyed. Belgard also warned Carpenter that he was interfering with a federal investigation, to which the Defendant responded that this was "his town and nobody tells him what to do in his town."[7] When the Defendant became belligerent and refused orders to disperse and leave the scene, Belgard warned that he would have to arrest Carpenter if he failed to cooperate and leave the area.

Amidst this chaotic scene, a uniformed Winnfield police officer showed up.[8] There were a few more words exchanged between the task force officers, the Defendant and the uniformed Winnfield officer, who was described by Deputy Belgard as "very professional."[9] Eventually Carpenter "stormed off" and the crowd dispersed immediately. Once the area was clear, Deputy Belgard ordered that both Porcia Sanders and Romando Russell be placed into the law enforcement vehicles to be taken to their designated locations. While booking Mr. Russell at the Winn Parish Sheriff's Office, Deputy Belgard received a message that the Defendant would like to speak with him. Once the two men were face to face, Carpenter repeatedly stated to Belgard "you either apologize to me right now or arrest me."[10] Belgard would not apologize for doing his

---

[6] Doc. #88, pp. 28-29.

[7] Doc. #88, p. 29.

[8] This Winnfield police officer recorded portions of the incident on some sort of recording device while on scene. Both parties presented transcripts of the audiotape so recorded. [Doc. #88, pp. 30-35].

[9] Doc. #88, p. 36.

[10] Doc. #88, p. 39.

job and assured Defendant there was no need to arrest him at that time. Carpenter made several more threatening and defensive comments and stormed out of the room.

In response to questions regarding whether Johnnie Ray Carpenter helped or hindered the task force officers in the exercise of their duties on August 27, 2009, Deputy Belgard stated, "It definitely hindered. In no way did it help us."[11] The task force officers did not notify Carpenter that they would be in his jurisdiction executing warrants that day, because "[t]he defendant was being investigated by the Louisiana State Police for running narcotics and a lot of other corruption."[12] Deputy Belgard further testified that the task force "had firsthand knowledge that [Carpenter] was friends with the family of Ms. Porcia Sanders" and wanted to avoid giving "a heads-up that we were coming to arrest her if she comes from a violent street gang," so as not to endanger the task force officers.[13]

Defendant Johnnie Ray Carpenter was indicted for and eventually convicted of the misdemeanor offense of assault on a process server, in violation of 18 U.S.C. § 1501. [Docs. ## 1, 56]. He signed a written waiver of trial by a district court judge, pursuant to 18 U.S.C. § 3401(b), and was tried by a jury before a magistrate judge. [Doc. #27]. Defendant filed a notice of appeal from both the original and amended judgments. [Doc. #80].

## LAW AND ANALYSIS

Under Federal Rule of Criminal Procedure 58(g)(2)(D), "[t]he defendant is not entitled to a trial de novo by a district judge. The scope of the appeal is the same as in an appeal to the court

---

[11] Doc. #88, p. 40.

[12] Doc. #88, p. 59.

[13] Doc. #88, p. 62.

of appeals from a judgment entered by a district judge."

## Sufficieny of the Evidence

Defendant moved for a judgment of acquittal at the close of the government's case in chief and again at the close of all evidence, pursuant to Federal Rule of Criminal Procedure 29.[14] As the Fifth Circuit has pointed out, "the only proper basis for a motion for judgment of acquittal is a challenge to the sufficiency of the government's evidence." *U.S. v. Hope,* 487 F.3d 224, 227 (5th Cir. 2007). "Review is conducted de novo, which means that we 'must assess whether a reasonable jury could have properly concluded, weighing the evidence in a light most deferential to the verdict rendered by the jury, that all of the elements of the crime charged had been proven beyond a reasonable doubt.' " *Id.* at 227-228 (quoting *U.S. v. Lucio,* 428 F.3d 519, 522 (5th Cir. 2005)). This Court is "not required to analyze the evidence with an eye toward negating every possible inference of innocence[;] rather, if the fact finder was presented with sufficient evidence to support the verdict reached, that verdict must be upheld." *Lucio,* 428 F.3d at 522 (internal citations omitted).

Defendant was found guilty, as indicted, of assault on a process server in violation of 18 U.S.C. §1501. That statute provides, in pertinent part: "[w]hoever knowingly and willfully obstructs, resists, or opposes any officer of the United States, or other person duly authorized, in serving, or attempting to serve or execute, any legal or judicial writ or process of any court of the United States, or United States magistrate judge... Shall, except as otherwise provided by law, be fined under this title or imprisoned not more than one year, or both."

Defendant argues in his appellate brief that he "had no knowledge that those causing the

---

[14] Doc. #89, pp. 231, 289.

disturbance were law enforcement officers" when Carpenter was made aware of the disturbance at the apartment complex.[15] Once on scene, Defendant argues that he was acting "in accord with his sworn duty" as Chief of Police by inserting himself into the purview of the federal task force and interfering with the execution of federal arrest warrants. Based on these facts, the Defendant argues that there "was absolutely no evidence" that Defendant knowingly or willfully obstructed the task force. Instead, Defendant claims that he "simply wanted the task force to complete the arrest process in an efficient and timely fashion to prevent the obstruction, opposition, or resistance to the arrest by an unruly crowd."[16]

However, the evidence introduced at trial simply does not comport with Defendant's version of events. Defendant was not in uniform and never identified himself as a police officer. He interfered with the task force by inciting the crowd and making it more difficult to execute the federal arrest warrants than it would have been in his absence. Although their obvious uniforms and verbal identification made it clear that the task force was proceeding as law enforcement officers, Deputy Belgard specifically made it known to Defendant that he was interfering with a federal investigation. Defendant responded that this was "his town and nobody tells him what to do in his town" and further refused orders to stand down.

Defendant claimed at trial, and argues on appeal, that he was acting pursuant to his duty as Chief of Police of Winnfield at all times relevant to this case, and as such, his actions were

---

[15] Doc. #84, p. 10.

[16] Doc. #84, p. 12.

7

justified. However, the jury was instructed regarding that defense and clearly rejected it.[17] Instead, the jury believed Deputy Belgard's testimony that Defendant "definitely hindered," rather than helped the task force, and that Defendant was the only person in the crowd over whom the task force was not able to regain control.[18] In reviewing the sufficiency of the evidence, this Court bears in mind that "it is the sole province of the jury to weigh the evidence and the credibility of the witnesses." *U.S. v. Davis*, 752 F.2d 963, 968 (5th Cir. 1985). This Court finds substantial evidence exists in the record to support the jury's verdict.

## Testimony Regarding Defendant's Criminal History

Defendant next argues that the trial court allowed Deputy Belgard to testify regarding Defendant's prior arrests, which compelled the Defendant to testify on his own behalf as rebuttal to Belgard's testimony. Defendant contends that a pretrial motion in limine prevented prior arrests and/or convictions of Defendant from being admitted at trial. However, as the government correctly points out, defense counsel was responsible for eliciting the relevant testimony from Deputy Belgard.[19] The testimony regarding prior arrests and/or convictions was given in direct response to defense counsel's repeated inquiries into why the task force failed to notify Defendant's police department, before entering Defendant's jurisdiction. Furthermore, Deputy

---

[17] Doc. #89, p. 305 (The jury was instructed as follows: "You must consider whether the defendant should be found not guilty because he was authorized by the fact that he was the chief of police for the city of Winnfield and was exercising his authority as such.").

[18] Doc. #88, p. 40; p. 65 (In response to whether the task force officers had to arrest anyone else in the unruly crowd, Deputy Belgard responded: "The rest of the crowd and Mr. Romando Russell was [sic] able to be calmed down and removed, removed from the situation. Only your defendant is the one who disobeyed our direct order -- many orders from several different officers.").

[19] Doc. #88, p. 61-63.

Belgard even attempted to avoid disclosing Defendant's prior arrests and convictions, but defense counsel pressed on.[20]

Federal Rule of Criminal Procedure 52(b) "defines a single category of forfeited-but-reversible error." *U.S. v. Olano*, 507 U.S. 725, 732 (1993). Under these circumstances, there is no reversible error. The doctrine of invited error applies to this situation; when injection of inadmissible evidence is attributable to the actions of the defense, the defense cannot later object to such "invited error." *United States v. Lemaire*, 712 F.2d 944, 948–49 (5th Cir. 1983), *cert. denied*, 464 U.S. 1012 (1983). Defense counsel elicited the complained-of testimony himself, and Defendant's decision to testify on his behalf was therefore also self-induced. The Court finds this assignment of error lacks merit.

## Release Pending Appeal

Finally, Defendant argues that he should have been released pending a final decision on his appeal, pursuant to 18 U.S.C. §3143, on the basis that his appeal raised substantial issues of fact and law. However, the magistrate judge denied Defendant's motion for release pending appeal, stating that the "[m]otion fails to raise a substantial question of law or fact in accordance with 18 U.S.C. 3143."[21] "It is well established that bail after conviction in the trial court is a matter for the sound discretion of that court, and that a convicted appellant cannot demand bail as a matter of right." *Smith v. U.S.,* 434 F.2d 612, 612-613 (5th Cir. 1970) (citing Fed. R. Crim P.

---

[20] Doc. #88, p. 62-63 (Defense counsel asked: "And to this day, to this day, from -- this was 2009, nothing's ever come about this, quote, "investigation," has it? He hasn't been arrested or convicted of anything, has he, since 2009, right?" Deputy Belgard responded: "I don't believe I'm at liberty to say the rest, no, sir.").

[21] Doc. #62.

46).

"To obtain release pending appeal, a convicted defendant must establish four factors: (1) that he is not likely to flee or pose a danger to the safety of others; (2) that the appeal is not for purpose of delay; (3) that the appeal raises a substantial question of law or fact; and (4) that the substantial question, if decided favorably to the defendant, is likely to result in reversal, in an order for a new trial, in a sentence without imprisonment, or in a sentence with reduced imprisonment." *U.S. v. Clark*, 917 F.2d 177, 179 (5th Cir. 1990) (citing Fed. R. App. P. 9(c); 18 U.S.C. § 3143(b)). The Court finds, in its independent assessment of the Defendant's motion for release, that Defendant must fail on the third prong. Defendant's appeal does not raise a substantial question "that is 'close' or 'that could very well be decided the other way' by the appellate court." *Id.* at 180 (internal citations omitted). The trial court was within its sound discretion to deny Defendant release pending appeal in this matter.

## CONCLUSION

For the reasons stated herein, the Court concludes that the record contains sufficient evidence to support Defendant's conviction. Therefore, Defendant's appeal of the magistrate judge's decision [Doc. # 80] is **DENIED**. Defendant's conviction is **AFFIRMED**.

**THUS DONE AND SIGNED**, in Shreveport, Louisiana this ⹁ ⹁ day of January, 2012.

_____
DONALD E. WALTER
UNITED STATES DISTRICT JUDGE